UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LEON POLLOCK,<br><br>                Plaintiff,<br><br>vs.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio Corporation, licensed in Idaho,<br><br>                Defendant. | Case No. 1:19-cv-00304-CWD<br><br><br>**ORDER RE: PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY (DKT. 39)** |

## INTRODUCTION

Before the Court is Pollock's Second Motion to Compel Discovery. (Dkt. 39.) The motion is fully briefed and at issue. The parties presented argument on July 8, 2021. Having carefully considered the briefing, arguments, and entire record, the Court will grant in part, deny in part, and reserve ruling in part the motion for the reasons that follow.

## BACKGROUND

This action involves a claim of insurance bad faith brought by Leon Pollock against Nationwide Mutual Insurance Company (Nationwide). (Dkt. 1 at 1.) The claim arises from a motor vehicle accident that occurred on June 25, 2014. Pollock was seriously injured when an uninsured motorist failed to stop and struck the vehicle Pollock was driving.

Pollock alleges that, despite submitting an adequate proof of loss for payment of the uninsured motorist policy limit of one million dollars, Nationwide failed to make a reasonable investigation or evaluation of his claim and refused to make a reasonable settlement offer. (Dkt. 1-1 at ¶ 26); (Dkt. 1-1, Ex. A at 65-67, 81.) On March 8, 2016, Pollock filed suit against Nationwide in state court, asserting breach of the insurance contract. (Dkt. 15-2, Ex. A.) After the state case was filed, Nationwide paid Pollock $25,000.00 in undisputed lost wages and $100,000.00 in undisputed damages. (Dkt 1-5, Answer at ¶ 10.) However, Nationwide disputed the total amount of damages Pollock was entitled to recover and agreed to submit the determination of the amount of damages to binding arbitration. (Dkt. 15-6, Ex. E at 3.)

On June 19, 2017, the arbitrator issued a decision finding Nationwide liable for compensatory damages, prejudgment interest, and attorney fees and costs. (Dkt. 15-3, Ex. B.) The arbitrator awarded Pollock a net amount of damages of $1,399,299.80, calculated after deducting offsets for other payments previously received by Pollock from Nationwide and workers compensation.

On June 29, 2017, Pollock filed an application for confirmation of the arbitration award and a petition for prejudgment interest. (Dkt. 15-3, Ex. B); (Dkt. 15-4, Ex. C); Dkt. 15-5, Ex. D.) On July 11, 2017, Nationwide filed a motion to vacate or modify the arbitration award and an objection to Pollock's petition for prejudgment interest. (Dkt 15-6, Ex. E.) The state court modified and confirmed the arbitration award on October 5, 2017, reducing the award to the policy limit, deducting the offsets, and awarding Pollock prejudgment interest accruing from the date of the arbitration decision. (Dkt. 15-6, Ex. E.)

Judgment was entered against Nationwide in the amount of $875,000.00, on November 20, 2017. (Dkt. 15-7, Ex. F.) Satisfaction of judgment was filed on January 3, 2018. (Dkt. 15-8, Ex. G.) However, Pollock alleges in this lawsuit that Nationwide did not pay the attorney fees awarded in the arbitration until January 8, 2018. (Dkt. 1 at ¶ 39.)

On January 8, 2019, Pollock filed the present case against Nationwide asserting claims involving breach of the insurance contract and breach of the implied covenant of good faith and fair dealing relating to the handling of the insurance claim. (Dkt. 1-1, Ex. A.) Nationwide filed a motion for judgment on the pleadings. (Dkt. 15.) The Court granted in part and denied in part Nationwide's motion, dismissing all claims except for the bad faith tort claim. (Dkt. 22.) However, the Court limited the surviving bad faith claim to Nationwide's conduct following the arbitration decision on June 19, 2017. (Dkt. 22.)

On October 20, 2020, Pollock filed his first motion to compel responses to requests for production of documents. (Dkt. 30.) The parties disputed the scope of relevant discovery in light of the Court's ruling limiting Pollock's bad faith claim to conduct occurring after the arbitration decision was issued. (Dkt. 28, 30-32.) The Court granted the motion to compel, and ordered Nationwide to respond to Pollock's requests for production numbered 4, 6, 9, 10, and 11. (Dkt. 33.)

Nationwide served responses to the requests for production on January 11 and 22, 2021. (Dkt. 39-5.) Some of the materials provided by Nationwide were produced in their entirety. Other materials were either withheld or produced with redactions based on Nationwide's assertion that they contain privileged attorney-client communications and work product. Nationwide provided a privilege log dated March 12, 2021, of the materials it

claims are undiscoverable. Consequently, Pollock filed a second motion to compel seeking production of the withheld and the redacted documents under Federal Rules of Civil Procedure 34 and 37. The second motion is presently before the Court. (Dkt. 39.)

## STANDARDS OF LAW

A party may move for an order compelling discovery pursuant to Federal Rule of Civil Procedure 37(a) when an opposing party fails to respond or fails to adequately respond to requests for production permissible under Federal Rule of Civil Procedure 34. Fed. R. Civ. P. 37(a)(3)(iv). "If a party…fails to obey an order to provide or permit discovery,…the Court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

If a party withholds discovery information on the basis of privilege, "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). The party wishing to withhold documents as privileged has the burden of establishing the privileged character of the communications. *Kirk v. Ford Motor Co.*, 116 P.3d 27, 34 (Idaho 2005)). Boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege. *Burlington Northern & Santa Fe Ry. Co. v. U.S. District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

# DISCUSSION

On this motion, Pollock seeks to compel production of the materials contained in Nationwide's privilege log in their entirety and without redaction. Alternatively, Pollock requests that the Court conduct an *in camera* review of the undisclosed materials.

Nationwide opposes the motion, arguing the withheld documents and the redacted portions of documents all contain privileged material or work product as reflected in the privilege log. Further, Nationwide asserts that the Court's Order did not require production of privileged documents. (Dkt. 40.) Nationwide has submitted unredacted copies of the materials in question to the Court for an *in camera* review.

To most completely address the issues raised on this motion, the Court has conducted a single, multi-purpose *in camera* review of the materials provided by Nationwide. *See e.g. Taladay v. Metropolitan Grp. Prop. And Casualty Insur. Co.*, 2015 WL 12030116, at *6-7 (W.D. Wash. Dec. 18, 2015) (adopting the use of a single *in camera* review to determine whether materials were discoverable or privileged). The Court's analysis and conclusions articulated below incorporate the Court's findings from the *in camera* review as applicable.

## 1. Discovery of Attorney-Client Privileged Materials

### A. The Attorney-Client Privilege

The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *See United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996). The attorney-client privilege in a diversity case is governed by state law. *See* Fed. R. Evid. 501.

Under Idaho law, "[f]or the attorney-client privilege to apply, the communication must be (1) confidential within the meaning of the rule, (2) made between persons described in the rule, and (3) for the purpose of facilitating the rendition of professional legal services to the client." *Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.*, 2007 WL 2480001, at *3 (D. Idaho Aug. 29, 2007); *see also* Idaho R. Evid. 502(b) (providing a privilege for "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client" made between the persons as described in the rule). "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Idaho R. Evid. 502(a)(5).

The privilege protects only disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). That a person is a lawyer does not make all communication with that person privileged. *Id.*

**B.     Discovery of Attorney-Client Privileged Materials in the Context of Bad Faith Insurance Claims**

In their briefs and during the hearing, both parties rely on the approach developed in Washington state caselaw for evaluating discovery of attorney-client privileged materials in the context of a bad faith insurance claim. (Dkt. 39, 40, 41.) "Under Washington law, it is presumed that when an insured brings a [first party] bad faith claim against its insurer, the attorney-client privilege does not protect from disclosure the communications between the insurer's attorney and the insurer's adjuster." *Phoenix Insur. Co. v. Diamond Plastics*

*Corp.*, 2020 WL 4261419, at *3 (W.D. Wash. July 24, 2020) (citing *Cedell v. Farmers Insur. Co. Wash.*, 295 P.3d 239, 246 (Wash. App. 2013)). An insurer may overcome the presumption of discoverability by showing, either *in camera* or otherwise, "that its attorney was counseling the adjuster as to the insurer's own potential for liability rather than investigating, evaluating, or processing the insured's claim. Upon such a showing, the insurer is ordinarily entitled to the redaction of notes that reflect the attorney's mental impressions." *Id*.

However, Washington state courts have expressly declined to apply the presumption of discoverability in the context of underinsured motorist (UIM) bad faith claims. *Cedell*, 295 P.3d at 246 ("[I]n first party insurance claims by insured's claiming bad faith in the handling and processing of claims, other than UIM claims, there is a presumption of no attorney-client privilege.); *Hoff v. Safeco Insur. Co.*, 449 P.3d 667, 675 (Wash. App. 2019) ("In UIM claims, we do not presume that the insurer has waived attorney-client privilege."); *Leahy v. State Farm Mut. Auto. Insur. Co.*, 418 P.3d 175, 181-182 (Wash. App. 2018). This is so because,

> [U]nlike other first party bad faith claims, '[t]he UIM insurer steps into the shoes of the tortfeasor and may defend as the tortfeasor would defend. Thus, in the UIM context, the insurance company is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted.'

*Leahy*, 418 P.3d at 182 (quoting *Cedell*, 295 P.3d 246). Thus, "in a UIM case… the insured must overcome a higher bar before it can discover privileged information." *Id.* One way to do so "is by showing that the party's opponent 'was engaged in or planning a fraud at the time the privileged communication was made, and ... the communication was made in furtherance of that activity.'" *Id.*; *see also Richardson v. Government Employees Insur. Co.*,

403 P.3d 115, 121-122 (Wash. App. 2017).

"Generally, the [fraud] exception is invoked only when the insured presents a prima facie showing of bad faith tantamount to civil fraud. To strip a communication of the attorney-client privilege, the party seeking discovery must show that (1) its opponent was engaged in or planning a fraud at the time the privileged communication was made, and (2) the communication was made in furtherance of that activity." *Barry v. USAA*, 989 P.2d 1172, 1176 (Wash. App. 1999); *see also Leahy*, 418 P.3d at 182.

Courts in the District of Idaho have applied Washington's presumption of discoverability in the context of bad faith insurance claims involving property loss. *See Stewart Title Guar. Co. v. Credit Suisse, Cayman Islands Branch*, No. 1:11–CV–227–BLW, 2013 WL 1385264, at *4–6 (D. Idaho Apr. 3, 2013); *Hilborn v. Metro. Grp. Prop. And Cas. Ins. Co.*, No. 2:12-cv-00636-BLW, 2013 WL 6055215 (D. Idaho Nov. 15, 2013); *Mogadam v. Liberty Mutual Fire Insur. Co.*, 2:14-cv-00224-EJL-CWD, 2015 WL 6510352 (D. Idaho Oct. 28, 2015). Neither this District nor the Idaho state courts have spoken directly on the application of the presumption in the context of UIM bad faith claims or, as applicable here, to uninsured motorist (UM) bad faith claims. *Id.*; *see also Cedillo v. Farmers Insur. Co.*, 408 P.3d 886, 896 n. 1 (Idaho 2017) (Burdick dissenting) (recognizing that the presumption of discoverability has been "limited and not extended to the UIM context," but that "bad faith defenses made to deny insurance claims are not exempt from discovery under the attorney-client privilege.").

Here, the Court finds it most likely that Idaho courts would analyze the discoverability of privileged material in the UIM and UM context in a similar fashion to the

approach developed in Washington's caselaw. *Id.*[1] Accordingly, the Court will apply Washington's framework to evaluate the discoverability of the materials identified in Nationwide's privilege log.

## C.    Application

Pollock argues the presumption of discoverability applies to all of the materials identified in Nationwide's privilege log despite the fact that this case involves a UM bad faith claim. (Dkt. 39, 41.)[2] Pollock contends that the circumstances in this lawsuit are akin to a first party insurance claim where a duty of good faith existed between the insured and the insurer in the claims adjusting process such that the presumption applies. Nationwide disagrees, arguing the presumption of discoverability does not apply in connection with a UM bad faith claim. (Dkt. 40.)

Having carefully reviewed the relevant case law and the parties' arguments, the Court finds the application of the analytical framework discussed above differs between three time periods during which the nature of the parties' relationship changed relevant to the bad faith claim presented in this lawsuit. The first time period began at the time Pollock submitted his claim for benefits under the policy and lasted until the filing of the state court breach of contract action on March 8, 2016. The second time period commenced after the

---

[1] Courts often treat UM and UIM cases as nearly interchangeable. *See Government Employees Ins. Co. v. Dizol*, 176 F.Supp.2d 1005, 1028 (D. Hawai'i 2001) (interpreting Hawai'i caselaw); *Melton v. Discover Prop. and Cas. Ins. Co.*, 760 F.Supp.2d 633, 635 n. 2 (W.D. VA 2011) (interpreting Virginia code); *Miller v. American Standard Ins. Co. of Wisconsin*, 759 F.Supp.2d 1144, 1149 (D. Ariz. 2010) (noting identical policy considerations generally apply to UM and UIM coverage questions but recognize possible differences in the recoverable damages).

[2] Pollock also argues Nationwide waived any claim of privilege by failing to raise it when responding to the first motion to compel. The Court disagrees. Nationwide asserted the privilege in response to the requests for production at issue in the first motion to compel and maintained that position by incorporating it in its supplemental responses. (Dkt. 39-5.)

breach of contract lawsuit was filed and continued until the issuance of the arbitration decision on June 19, 2017. The third time period encompasses the time period following the arbitration decision. The Court will discuss each time period in turn below.

### i.  Time Period Prior to the filing of the State Court Lawsuit

During the first time period, from the time of the policy claim until the filing of the breach of contract lawsuit, Pollock and Nationwide were in a first-part fiduciary relationship. Thus, the presumption of discoverability applies to any claimed privileged communications made during that time. Nationwide may overcome the presumption by establishing that "its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability…." *Cedell*, 295 P.3d at 246. Having carefully reviewed the records, the Court finds the presumption is rebutted.

There are a limited number of documents identified in the privilege log that were generated during this first time period. The Court reviewed these documents *in camera* and finds that all but one of the documents contain privileged confidential communications of Nationwide's general counsel acting solely in the capacity as legal counsel. The documents contain legal opinions concerning Idaho law as it relates to the workers compensation exclusion in the UM endorsement provision of the insurance policy, and Idaho case law regarding payment of undisputed general damages. Nothing in these documents concerns investigating, evaluating, or processing the claim itself. The materials contain only legal opinions of whether and to what extent coverage existed under Idaho law and the applicable policy provisions, and Nationwide's potential liability. The documents reflect that

Nationwide's general counsel was not acting in a quasi-fiduciary capacity prior to the state

court lawsuit. The Court therefore finds that the presumption has been rebutted as the

materials created during this time period that are privileged.

The one exception to this finding is the redaction at PF 06840 of the privilege log.

The redacted portion of PF 06840 appears to be overly expansive such that it encompasses

non-privileged material in the form of a comment by the claims adjuster regarding the

processing of Pollock's claim. The non-privileged portion of the redaction is discoverable.

Nationwide will therefore be ordered to correct the redaction on PF 06840 so that only the

legal opinion of general counsel is redacted. The corrected redaction must be produced to

Pollock on or before July 30, 2021. The remainder of the materials from this time period are

privileged.

Next, the Court reviewed the materials to determine whether the fraud exception

applies. That is to say, whether Pollock has shown that Nationwide "'was engaged in or

planning a fraud at the time the privileged communication was made, and...the

communication was made in furtherance of that activity.'" *Leahy*, 418 P.3d at 182;

*Richardson*, 403 P.3d at 121-122. Having reviewed the materials and the parties'

arguments, the Court finds there is no evidence that Nationwide was engaged in fraud

during this time period.[3] Therefore, the privilege is intact as to the materials identified in

the privilege log as having been created during this time period. Accordingly, Pollock's

motion will be denied as to the materials generated prior to the filing of the breach of

contract lawsuit with the exception of the redaction at PF 06840, which contains non-

---

[3] This determination is limited to resolving the issues presented in this motion. The Court makes no ruling on the merits of Pollock's bad faith claim in this order.

privileged material. Nationwide will be ordered to correct the redaction at PF 06840 and produce the non-privileged material to Pollock.

### ii. Time Period Prior to the Arbitration Decision

Upon the filing of the state court breach of contract action, the parties were actively litigating Pollock's claim for payment of benefits under the UM provision of the policy. The arbitration proceedings was a part of the state court litigation between Pollock and Nationwide to resolve the parties' dispute over the total amount of damages recoverable under the UM term of the insurance policy. In this context, the parties' relationship assumed an adversarial posture, with Nationwide standing in the shoes of the uninsured motorist and asserting the defenses available to the tortfeasor in that role. *Leahy*, 418 P.3d at 182. As such, the presumption of discoverability does not apply to documents generated during the time period after the state court UM lawsuit was filed until the arbitration decision was issued. *Hoff*, 449 P.3d at 675; *Leahy*, 418 P.3d at 181; *Cedell*, 295 P.3d at 245.

Thus, to the extent Nationwide can demonstrate that the documents are in fact privileged – e.g., "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client which were made…between the client or the client representative and the client's lawyer…" – they may be withheld or redacted. Idaho R. Evid. 502. The Court finds, upon review, that the documents identified in the privilege log for this time period fall within the purview of the attorney-client privilege, with certain exceptions.

First, the Court finds that the records of Nationwide's payments of attorney fees and

costs (the "payment records") are not privileged.[4] The payment records do not contain nor reveal any confidential communications or legal advice made for the purpose of facilitating legal services. Accordingly, Nationwide will be ordered to disclose the unredacted payment records identified in the privilege log.[5]

Second, the Court's *in camera* review of the records contained in the Trial Division Documents section of the privilege log reveals that certain of the withheld documents and redactions do not appear to be privileged. For instance, some of the withheld documents do not appear to contain confidential attorney client communications within the guise of Idaho Rule of Evidence 502. Further, some of the redactions are overly expansive and include non-privileged material.[6]

The Court has expended a great deal of time and resources in reviewing the submitted materials. However, Nationwide's privilege log fails to provide an adequate explanation of why some of the materials in the Trial Division Documents section of the privilege log are privileged. The Court therefore cannot determine whether these materials are privileged without further clarification from Nationwide. Accordingly, the Court will order Nationwide to review anew the Trial Division Documents identified in the privilege

---

[4] The payment records are located in the privilege log on pages 10-13, in the section entitled "Claim Activity Log Redactions." These documents are records of Nationwide's payments of attorney fees and costs made during the state court litigation and arbitration time period as well as the time period following the arbitration decision, which is discussed below.

[5] Nationwide's privilege log also indicates that the payment records are irrelevant. The relevance of the payment records to Pollock's bad faith claim is not readily determinable at this time. The Court finds disclosure of the payment records is appropriate in this bad faith lawsuit given the broad scope of discovery provided for in Rule 26(b)(1).

[6] These examples are not an exhaustive list of the types of non-privileged materials that appear in the withheld and redacted records. Given the number of documents and Nationwide's failure to demonstrate how the materials are privileged, Nationwide will be directed to review the Trial Division Documents submitted for review to ensure they are truly privileged as discussed above.

log that it asserts are privileged, and determine whether the withheld documents and redactions contain privileged material. Any documents or redactions that do not contain privileged material must be produced to Pollock by July 30, 2021. As to the materials Nationwide maintains are privileged, Nationwide must submit a revised privilege log clarifying the basis for asserting the privilege. In doing so, Nationwide is directed to use the same numbering for the revised privilege log that is used in the privilege log dated March 12, 2021, consistent with the numbers reflected on the documents that have been submitted *in camera*.

The remainder of the documents identified in the privilege log that were created during Nationwide's defense in the state court lawsuit and the arbitration proceeding are privileged. Nationwide hired litigation counsel, Clifford Payne, to defend it in the state court action and the arbitration proceedings. The documents generated during this time period, other than the attorney fee payment records, contain Mr. Payne's legal opinions regarding Nationwide's potential liability and defense against Pollock's breach of contract action and the arbitration proceeding. The communications were made between Nationwide and Mr. Payne. These were confidential communications made for the purpose of facilitating the rendition of professional legal services between the attorney and the client and are therefore privileged. Idaho R. Evid. 502(b). Likewise, the materials identified in the privilege log that relayed and referenced Mr. Payne's legal advice between and among Nationwide representatives are also privileged. Idaho R. Evid. 502(b).

As to the documents that the Court has found to be privileged, Pollock may pierce the privilege by establishing the fraud exception. *Richardson*, 403 P.3d at 122 (citing

*Cedell*, 295 P.3d 239). To that end, the Court has reviewed the privileged materials created during this time period to determine whether Nationwide "'was engaged in or planning a fraud at the time the privileged communication was made, and... the communication was made in furtherance of that activity.'" *Leahy*, 418 P.3d at 182; *Richardson*, 403 P.3d at 121-122. Upon that review, the Court finds no indication that Nationwide was engaged in or planning a fraud during the time these privileged communications were made.[7]

Nothing in the privileged documents gives rise to a reasonable belief that an act of "bad faith tantamount to civil fraud" had occurred. The communications contained in the privileged materials involve routine assessments of Nationwide's potential liability and defenses. Particular to Pollock's assertion of fraud made in this motion, the materials identified in the privilege log from this time period contain Mr. Payne's recommendations for litigating the breach of contract claim, his evaluation of the likely outcome of the anticipated arbitration proceeding, and his assessment of the arbitrator's award after it was issued. There is nothing in the privileged materials indicative of a scheme or conduct by Nationwide intended to trick Pollock into forfeiting his bad faith claims as suggested in Pollock's briefing and during oral argument on the motion. (Dkt. 41 at 5-6.) The Court therefore finds that the fraud exception has not been established and that the privilege applies to the materials identified in the privilege log that were created after the state court lawsuit was filed until the arbitration decision was issued, except for the payment records and Trial Division Documents discussed above.

---

[7] This determination is limited to resolving the issues on this motion. It is not a ruling on the merits of Pollock's bad faith claim.

### iii.  Time Period After the Arbitration Decision

### a.  The Presumption of Discoverability

Following the arbitration decision, the parties relationship reverted to a first-party insurer status where the attorney-client privilege is presumed waived. Once the arbitration decision was issued, Nationwide no longer asserted defenses available to the tortfeasor. *Leahy*, 418 F.3d at 182. Rather, Nationwide challenged the arbitration award based on the policy limits of the UM endorsement, a defense not available to the tortfeasor who was without insurance. As such, the presumption of discoverability applies to the documents identified in the privilege log that were generated after the date the arbitration decision was issued, June 19, 2017.

To rebut the presumption, Nationwide must establish that its attorneys were "not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability…." *Cedell*, 295 P.3d at 246. There are several documents identified in the privilege log that fall into this time frame. The Court has carefully reviewed these materials and concludes that Nationwide has succeeded in overcoming the presumption of discoverability.

Within days of the arbitration decision being issued, Nationwide hired Idaho coverage counsel, Michael Brady, to replace Mr. Payne. The documents identified in the privilege log from this time period demonstrate that Mr. Payne and Mr. Brady both served solely as legal counsel to Nationwide. Neither attorney engaged in quasi-fiduciary tasks such as investigating, evaluating, or processing Pollock's claim. Rather, the materials involve the transition of Nationwide's legal representation from Mr. Payne to Mr. Brady,

and Mr. Brady's assessment of Nationwide's legal options for addressing the arbitration decision. Thus, the presumption of discoverability has been rebutted. The attorney-client privilege applies to documents generated during this time period which Nationwide can demonstrate contain privileged communications.

Having reviewed the documents provided *in camera*, the Court finds the materials identified in the privilege log that were created after the arbitration decision contain confidential privileged communications with the exception of the payment records and the materials identified in the Trial Division Documents section of the privilege log. As previously discussed, the records of Nationwide's payments to its attorneys do not contain any confidential communications made for the purpose of facilitating legal services. Idaho R. Evid. 502(b). Therefore, Nationwide must produce the unredacted payment records.[8] Further, the Trial Division Documents appear to contain non-privileged materials or redactions that are overly expansive. Nationwide will be ordered to review the Trial Division Documents and either: 1) produce the non-privileged materials or 2) submit a revised privilege log as discussed above.

The remainder of the documents identified in the privilege log that were created after the arbitration decision, other than the payment records and the Trial Division Documents, however, are privileged. These materials contain the legal opinions, analysis, and recommendations of Mr. Payne and Mr. Brady made to Nationwide of Nationwide's potential liability and possible avenues for contesting the arbitration award. These are confidential privileged communications between Nationwide and its attorneys and,

---

[8] As noted above, the Court rejects Nationwide's position that the payment records are irrelevant. *See* Footnote 5 *supra*.

therefore, privileged. Idaho R. Evid. 502(b).

Pollock can pierce the privilege through the fraud exception, which Pollock has asserted here. *See Leahy*, 418 P.3d at 624; *Hoff*, 449 P.3d at 670. The Court finds as follows.[9]

### b.      The Fraud Exception

When the fraud exception is asserted, the Court engages in a two-step process to determine if piercing the attorney-client privilege is appropriate.

> First, the court determines whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to evoke the fraud exception has occurred. Second, if so, the court subjects the documents to an in camera inspection to determine whether there is a foundation in fact for the charge of civil fraud. The in camera inspection is a matter of trial court discretion.

*Leahy*, 418 P.3d at 182 (quoting *Barry v. USAA*, 989 P.2d at 1176) (citations omitted)).

### 1.      Step One

Pollock argues Nationwide engaged in a "carefully laid trap" tantamount to fraud by refusing to pay and delaying payment after the arbitration decision was issued to trick Pollock into forfeiting his bad faith claim. (Dkt. 41 at 5-6.) Pollock contends that, once the arbitration decision established that the value of the claim was in excess of the policy limits, Nationwide had a fiduciary duty to pay the claim. Instead of paying the claim, Pollock asserts, Nationwide tactically forced Pollock to reduce the arbitration award to a final judgement to foreclose and trick Pollock into forfeiting his bad faith claim. (Dkt. 41 at 5-6.)

Having carefully reviewed the record, the Court finds Pollock has failed to establish

---

[9] The Court's discussion of the fraud exception relevant to this time frame is more comprehensive than the preceding time periods because Pollock's fraud contentions are directed more particularly to the time period following the arbitration decision.

a good faith belief that Nationwide engaged in wrongful conduct sufficient to invoke the fraud exception to the privilege. First, the allegations making up Pollock's bad faith claim, although sufficient to plead a prima facie case, do not, in and of themselves, suffice for waiver of the attorney-client privilege between Mr. Payne and Nationwide based on the civil fraud exception. *See Barry*, 989 P.2d at 1177 (finding that while allegations of bad faith "may be sufficiently supported by the record to establish a prima facie case of bad faith insurance…, they do not, in and of themselves, constitute a good faith belief that [the insurer] committed fraud."). Something more than a claim of bad faith is required to invoke the fraud exception. *Id.*

Turning to the particular contentions of fraud, Pollock argues Nationwide tricked him into forfeiting his bad faith claim by not paying the arbitration award and forcing him to obtain a final judgment before receiving payment. (Dkt. 39, 41.) The facts in the record do not support such a finding.

The arbitration decision was issued June 19, 2017. Nationwide successfully contested the amount awarded by the arbitrator and obtained a modification from the state court reducing the award amount. Thus, the final amount of the arbitration award was not known until the state court issued its decision modifying the arbitration award on October 6, 2017, and entered a final judgment on November 20, 2017.[10] Thereafter, Nationwide remitted checks for payment of the modified, final arbitration award amount and prejudgment interest on December 18, 2017 – less than thirty days after the final judgment was entered. (Dkt. 1-1 at ¶ 35.) However, the first checks did not clear. New checks were

---

[10] The Court notes that the judgment was entered three days before Thanksgiving day, which occurred on November 23, 2017.

issued and the payment was made on December 21, 2017. (Dkt. 1-1 at ¶ 39.) Nationwide remitted payment for attorney fees on January 8, 2018.

Even if these facts as alleged by Pollock in the Complaint are true, they do not establish by themselves a good faith belief that wrongful conduct occurred sufficient to evoke the fraud exception. Nationwide's contest of the arbitration decision was not baseless. Indeed, the challenge proved fruitful given the state court's decision modifying the award. Once the final arbitration amount was resolved, Nationwide submitted payment of the arbitration award within approximately one month of the final judgment being entered. The problem with the first checks issued in December of 2017, while undoubtedly frustrating, again does not amount to fraud. The new checks were issued in a reasonable time given the holiday season. Simply put, the record does not give rise to a factual showing adequate to support a good faith belief that Nationwide engaged in wrongful conduct tantamount to fraud with regard to its handling and payment of the arbitration award.[11]

Plaintiff has therefore failed to establish step one of the fraud exception. Thus, the Court need not proceed to the second step and inspect the privileged documents *in camera*. Nevertheless, as indicated above, the Court has undertaken an *in camera* review of the materials provided by Nationwide and finds as follows on step two.

### 2.    Step Two

The second step of the fraud inquiry requires an *in camera* review of the documents to determine whether there is in fact a basis for the claim of civil fraud. The materials in

---

[11] This ruling is limited to the determinations regarding the attorney client privilege raised on this motion. The Court makes no determination regarding the merit of Pollock's substantive bad faith claim.

dispute are contained within four categories of documents as organized in Nationwide's privilege log dated March 12, 2021 (Dkt. 39-6):

1.   Claim File Documents (PF Log 1-127);

2.   Trial Division Documents (PF 128-582);

3.   Claim Activity Log Redactions (PF 4160-4508); and

4.   Email Redactions (PF 4775-4794) and (PF 14278-14307).

Having performed a careful review of the privileged materials, the Court finds nothing in the documents that would permit a reasonable person to believe that an act of "bad faith tantamount to civil fraud" has occurred.[12] The privileged materials contain confidential communications between Nationwide and its litigation attorney, Mr. Payne, and its coverage counsel, Mr. Brady. These materials consist of legal opinions, recommendations, and advice from Mr. Payne and Mr. Brady to Nationwide regarding its potential liability and their assessments of the legal options available to Nationwide to address and potentially challenge the arbitration decision.

Relevant to Pollock's particular contentions of fraud, the materials are devoid of any indication that Nationwide devised a scheme to trick or trap Pollock into forfeiting his bad faith claims following the arbitration decision as suggested in Pollock's briefing. (Dkt. 41 at 5-6.) Rather, the contents of these materials convey the evaluations and recommendations by Nationwide's legal counsel concerning the arbitrator's decision. There is no indication that Nationwide contemplated or engaged in actions tantamount to fraud following the arbitration decision in an effort to deprive Pollock of his bad faith claim.

---

[12] Again, this determination is limited to resolving the issues on this motion, it is not a ruling on the merit of Pollock's substantive bad faith claim.

For these reasons, the Court finds Pollock has failed to establish the fraud exception.

Accordingly, the privileged materials created after the date of the arbitration decision were

properly withheld from production, with the exception of the payment records and the Trial

Division Documents. Nationwide must produce the payment records and proceed with a

review of the Trial Division Documents as directed above.

## 2. Work Product Doctrine

In addition to the attorney-client privilege, Nationwide also asserts that the work

product doctrine precludes discovery of certain materials identified in the privilege log.

(Dkt. 40.) The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3),

is a qualified protection limiting discovery of "documents and tangible things" prepared by

a party or his or her representative in anticipation of litigation or trial. *Admiral Ins. Co. v.*

*U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989); *see Upjohn*, 449

U.S. at 397–402; Fed. R. Civ. P. 26(b)(3). The party claiming work product protection bears

the burden of establishing that the work product doctrine applies. *United States v. Richey*,

632 F.3d 559, 566 (9th Cir. 2011).

Under Rule 26(b)(3), "such documents may only be ordered produced upon an

adverse party's demonstration of 'substantial need [for] the materials' and 'undue hardship

[in obtaining] the substantial equivalent of the materials by other means.'" *Hilborn*, 2013

WL 6055215, at *3 (quoting Fed. R. Civ. P. 26(b)(3)). In the context of a bad faith

insurance claim, "opinion work product may be discovered and admitted when mental

impressions are at issue in a case and the need for the material is compelling." *Holmgren v.*

*State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). These elements are

present here.

The mental impressions of Nationwide are at issue in this bad faith insurance claim settlement case. *Id.* ("In a bad faith insurance claim settlement case, the strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue."). Further, the need for the material is compelling because the information is solely in the possession of the insurer. *See Hilborn*, 2013 WL 6055215, at *4 (citing *Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, 2011 WL 4914941 (S.D. Cal. Oct.17, 2011) (holding that compelling need existed for producing work product in bad faith case where information was in "exclusive control" of insurer and insured had "no other way to probe reasons [insurer] denied [the insured's] claim")). Accordingly, the work product doctrine does not apply here as a basis for withholding documents from production. Nationwide will be ordered to produce any documents it withheld or redacted based only on the work product doctrine. *See e.g.*, (PF LOG 128-336, 339-360, 337-338, 361-376, 377-383, 478-496, 529); (PF 4435-4437.)[13]

---

[13] This is a non-exhaustive list of materials in the privilege log that Nationwide asserted are undiscoverable based only on the work product doctrine. Nationwide is directed to carefully review the privilege log and produce any materials that it withheld or redacted based solely on the work product doctrine.

# ORDER

THEREFORE IT IS HEREBY ORDERED that the Second Motion to Compel (Dkt. 39) is **GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART** as follows:

1)    The Motion is granted as to the payment records identified in the privilege log dated March 12, 2021, on pages 10-13, and the materials withheld or redacted based only on the work product doctrine. Defendant must produce the unredacted payment records and the work product materials to Plaintiff by **July 30, 2021**.

2)    Nationwide is ordered to review the Trial Division Documents identified in the privilege log dated March 12, 2021, and submit a revised privilege log for any materials Nationwide claims are privileged by **July 26, 2021**. Any materials in the Trial Division Documents that Nationwide determines are not privileged must be produced to Plaintiff by **July 30, 2021**. The Court will reserve ruling on any materials identified in the revised privilege log that Nationwide asserts are privileged.

3)    The Motion is denied as to the remainder of the records identified in the privilege log dated March 12, 2021.

DATED: July 15, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge